SHAWN J. KOLITCH (*admitted Pro Hac Vice*)
E-mail: shawn@khpatent.com
OWEN W. DUKELOW (State Bar No. 196265)
E-mail: owen@khpatent.com
KOLISCH HARTWELL, P.C.
260 Sheridan Avenue, Suite 200
Palo Alto, California 94306
Telephone: (650) 325-8673
Facsimile: (650) 325-5076

*Of Attorneys for Plaintiff*
*Faraday Bicycles, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARADAY BICYCLES, INC., a Delaware corporation,<br><br>         Plaintiff,<br><br>      v.<br><br>FARADAY&FUTURE INC., a California corporation,<br><br>         Defendant. | Case No. 4:17-cv-2308 DMR<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT'S TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN**<br><br>**HEARING NOTICED FOR OCTOBER 26, 2017**<br>**ORAL ARGUMENT REQUESTED** |

Plaintiff Faraday Bicycles, Inc. hereby gives notice of its motion for preliminary injunction to be heard on October 26, 2017.

Plaintiff moves the Court for an order preliminarily enjoining Defendant Faraday&Future Inc. from infringing Plaintiff's trademark FARADAY, including that Defendant cease use of FARADAY and FARADAY FUTURE as trademarks for electric vehicles.

## TABLE OF CONTENTS

**1.  Introduction** ..................................................................................................... **1**

**2.  Summary of Argument for Granting the Motion for Preliminary Injunction** ............. **2**

**3.  Facts** .............................................................................................................. **3**

   *3.1  The Value in Faraday Bicycles' FARADAY Trademark* ...................................... *4*

   *3.2  Defendant's Use of FARADAY and FARADAY FUTURE* ..................................... *5*

   *3.3  The Irreparable Harm to Faraday Bicycle's FARADAY Trademark* ............................ *6*

**4.  Legal Argument** ............................................................................................ **11**

   *4.1  Legal Standard for a Preliminary Injunction Against Trademark Infringement* ............. *11*

   *4.2  Faraday Bicycles Has a High Likelihood of Success on the Merits* ................................ *13*

      (1) Strength of the Mark ................................................................. 13

      (2) Proximity of the Goods ............................................................... 14

      (3) Similarity of the Marks ............................................................... 14

      (4) Evidence of Actual Confusion ....................................................... 15

      (5) Marketing Channels Used ........................................................... 17

      (6) Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser ......... 17

      (7) Defendant's Intent in Selecting the Mark ......................................... 18

      (8) Likelihood of Expansion of the Product Lines .................................... 18

   *4.3  Faraday Bicycles Is Being Irreparably Harmed* ......................................... *19*

   *4.4  The Balance of Hardships Favors Faraday Bicycles* ...................................... *20*

   *4.5  Granting an Injunction Serves the Public Interest* ......................................... *21*

**5.  Conclusion** .................................................................................................. **21**

**Cases**

*AMF v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)      13, 15, 17, 18

*Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)      20

*Athleta, Inc. v. Pitbull Clothing Co.*, 2013 U.S. Dist. LEXIS 6867, *34 (C.D. Cal. 2013)    19, 20, 21

*BitTorrent* case. *BitTorrent, Inc. v. Bittorrent Marketing GMBH*, 2014 US Dist. LEXIS 157593, *42 (N.D. Cal. 2014)      16

*Brookfield Comm., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999)      17

*Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 557 (C.C.P.A. 1975)    14

*CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009)      19

*Daddy's Junky Music Stores, Inc. v. Bid Daddy's Family Music Ctr.*, 109 F.3d 175, 286 (9th Cir. 1997)      17

*Grocery Outlet, Inc. v. Albertson's, Inc., 497 F.3d 949, 951 (9th Cir. 2007)*      13

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013)      12, 19

*Hunter Indus., Inc. v. Toro Co.*, 110 USPQ2D 1651, 1660-61 (TTAB 2014)      14

*In re El Torito Rests., Inc.*, 9 USPQ2d 2002, 2004 (TTAB 1988)      14

*Johnson v. Couturier, 572 F.3d 1067, 1078 (9th Cir. 2009)*      12

*M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1082 (9th Cir. 2005)      15

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1372 (Fed. Cir. 2005)      15

*Presto Prods., Inc. v. Nice-Pak Prods., Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988)      15

*Rhino Metals, Inc. v. Kodiak Safe Co., LLC*, 2017 US Dist. 90820 (D. Ida. 2017)      12

*Rhino Metals, Inc. v. Kodiak Safe Co., LLC*, 2017 US Dist. 91744, *44                    12

*Uber Promotions, Inc. v. Uber Technologies, Inc.*, 161 F. Supp. 3d 1253, 1276 (N.D. Fla. 2016)
                                                                        12, 15, 16, 19

*United States v. Hinkson,* 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)                    12

*Wella Corp. v. Cal. Concept Corp.*, 558 F.2d 1019, 1022 (C.C.P.A. 1977)                    14

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249
   (2008)                                                                   12, 19, 21

**Statutes**

15 U.S.C. § 1114                                                              11

15 U.S.C. § 1116(a)                                                            11

15 U.S.C. § 1125                                                              11

### 1. **Introduction**

Faraday Bicycles has owned its FARADAY trademark for electric bicycles (example shown at right) since 2012 and has been building goodwill in FARADAY by consistently designing, building, delivering, and standing behind its innovative, high quality, and reliable two-wheeled vehicles and their parts and accessories. Faraday Bicycles sells



its FARADAY-branded products across the United States and Europe, where it has enjoyed a sterling reputation for innovation, quality, and performance in the electric vehicle industry, at least until the present trademark infringement began. Nonetheless, due to Faraday Bicycles' devoting significant time, money and effort in developing consumer recognition and awareness, the FARADAY brand enjoys consumer recognition on a par with older, larger electric bicycle makers in the United States.

The FARADAY trademark's strength is further shown by Faraday Bicycles' earned media in a broad range of independent publications in such fields as general news, sports, bicycling, and technology that have positively reviewed or profiled Faraday Bicycles' products. Faraday Bicycles owns U.S. and foreign trademark registrations, including U.S. Trademark Registration No. 4,413,334 for the mark FARADAY for electric bicycles. Faraday Bicycles applied for and received this registration years before Defendant began using FARADAY and FARADAY FUTURE as trademarks in the electric vehicle industry.

Defendant's large marketing operation under the FARADAY and FARADAY FUTURE marks has already tarnished the goodwill in the FARADAY trademark due to Defendant's highly public missteps, and will continue to do so absent a preliminary injunction. As will be described further below, Defendant's current reputation has been summed up as: "Faraday has all the earmarks of one of those companies that promises you the world but doesn't necessarily deliver it." Defendant is causing irreparable harm to Faraday Bicycles by tarnishing the FARADAY

trademark with a flood of negative publicity and confusion. Faraday Bicycles therefore moves this court to enjoin Defendant from use of FARADAY and FARADAY FUTURE as trademarks for electric vehicles.

### 2. Summary of Argument for Granting the Motion for Preliminary Injunction

Defendant's use of the FARADAY and FARADY FUTURE marks in operating its electric vehicle company and advertising its products has caused, and is likely to continue to cause, consumer confusion and tarnishment of the FARADAY trademark, resulting in irreparable harm to Faraday Bicycles. Defendant's infringement is causing consumers to be mistaken as to the origin of each party's goods, and to mistakenly believe that Faraday Bicycles and Defendant are commonly owned, operated or otherwise affiliated, connected or associated in violation of the Lanham Act. Members of the public have been, and are likely to continue being, confused as to the origin, sponsorship, authorization and approval of Faraday Bicycles in relation to Defendant's company and products. This has caused, and continues to cause, irreparable harm to Faraday Bicycles and its registered trademark by diluting its brand exclusivity and tarnishing its reputation. This damage to Faraday Bicycles' trademark rights occurs in the minds of consumers, so there is no adequate remedy at law.

Faraday Bicycles' likelihood of success on the merits at the summary judgment and trial stages are high, because the FARADAY mark is inherently distinctive and has been further strengthened by Faraday Bicycles' extensive marketing under the FARADAY mark for more than five years. The respective marks are identical as to FARADAY and very similar as to FARADAY FUTURE. The products are so close that they overlap in the marketplace for electric vehicles and are within the natural expansion zone, particularly from cars to bicycles. The marketing channels of Defendant, which are online and at trade shows such as the Consumer Electronics Show (CES), are the same channels used by Faraday Bicycles. Defendant has been on notice of its infringement at least since March 2016, and has intentionally continued the infringement nonetheless. Defendant's intent prior to notice is unknown, as it must be at this preliminary stage. However, considering that Faraday Bicycles' registration of FARADAY preceded Defendant's incorporation

and launch of a major marketing campaign, Defendant's prior knowledge is likely as well. Faraday Bicycles has experienced numerous instances of actual confusion. Faraday Bicycles and Defendant are marketing products to ordinary consumers of electric vehicles. Thus, all the factors for likelihood of confusion favor a finding of trademark infringement.

Defendant might oppose a preliminary injunction on the basis that Defendant has not actually sold or even built a production electric vehicle, which is the case to the best of Faraday Bicycles' knowledge. However, Faraday Bicycles believes Defendant's lack of an actual product further supports a preliminary injunction in at least three ways: (1) Defendant's bad reputation from its dubious ability to provide a viable product is an aspect of the irreparable harm to the FARADAY mark; (2) the lack of an actual FARADAY-branded production car means that Defendant's investment in the mark is minimal at this point, and (3) a preliminary injunction now, while Defendant has no production car, will have minimal risk of harm to Defendant. All of these factors tip the balance of hardships in Faraday Bicycles' favor. Finally, the public interest in protecting consumer confidence in the source-identifying nature of trademarks is served by the grant of a preliminary injunction against Defendants' infringing uses of FARADAY and FARADAY FUTURE.

### 3. Facts

Faraday Bicycles has been building goodwill in its FARADAY trademark for electric bicycles since 2012 by consistently designing, building, delivering, and standing behind its innovative, high quality, and reliable two-wheeled vehicles and their parts and accessories. Declaration of Adam Vollmer, Managing Director of Faraday Bicycles, ¶ 2. Faraday Bicycles sells its FARADAY-branded products across the United States and Europe, where it has registered its trademarks. *Id.*, ¶ 3 and Exhibit A[1] (Faraday Bicycles' Dealer Locator Webpage).

---

[1] https://www.faradaybikes.com/dealer-locator/ (accessed Sep. 7, 2017).

**3.1 <u>The Value in Faraday Bicycles' FARADAY Trademark</u>**

Faraday Bicycles' products have earned a reputation for innovation, quality, and performance in the electric vehicle industry. *Id.* ¶ 4 and Exhibit B,[2] Carpenter, Shelby, The Two-Wheeled Dreamers at Faraday Want You to See Electric Bikes Everywhere, *Forbes*, Aug. 24, 2016. The *Forbes* article about Faraday Bicycles also describes efforts by carmakers Ford and GM to expand into electric bicycles. *Id.*, Ex. B, p. 4. Due to Faraday Bicycles' devotion of significant time, money and effort in developing consumer recognition and awareness, the FARADAY brand enjoys consumer recognition on a par with older, larger electric bicycle makers in the United States. *Id.* ¶ 5 and Exhibit C, Faraday Bicycles Market Research Survey, July 2015.

Faraday Bicycles has invested more than redacted in advertising and marketing for its FARADAY products and services, *e.g.*, in presenting the FARADAY Porteur electric bicycle at the 2014 Consumer Electronics Show in Las Vegas. Vollmer Decl., ¶ 6. The FARADAY trademark is part of significant goodwill possessed by Faraday Bicycles, which overall is valued between redacted over net asset value. Declaration of Lodewijk van Hussen, Director of Mergers and Acquisitions for Pon Holdings B.V. ("Pon") ("van Hussen Decl."), ¶ 2. Pon recently acquired Faraday Bicycles. *Id.* Pon operates an extensive automobile dealer and service network in the Netherlands, which includes sales and service of brands such as Volkswagen, Audi, Porsche, Skoda, and Bentley, among others, and is in the process of expanding into the U.S. *Id.*, ¶ 3. Pon's operations provide products to an integrated market for mobility products, including bicycles and passenger automobiles, both electric and non-electric. *Id.,* ¶ 4.

The strength of the FARADAY trademark is further shown by Faraday Bicycles' earned media in a broad range of independent publications in such fields as general news, sports, bicycling, and technology that have reviewed or profiled Faraday Bicycles' products. Vollmer Decl., ¶ 7 and Exhibit D[3] (including links to forty-seven such articles at www.faradaybikes.com/press from

---

[2] https://www.forbes.com/sites/shelbycarpenter/2016/08/24/two-wheeled-dreamers-at-faraday-want-you-to-see-electric-bikes-everywhere/#20e6fe636da6 (accessed Sep. 7, 2017).
[3] https://www.faradaybikes.com/press/ (accessed Sep. 7, 2017).

publications such as Newsweek, Outside, Bicycling, Wired, Financial Times, Fast Company, TechCrunch, Popular Mechanics, and C/Net).

Faraday Bicycles owns U.S. and foreign trademark registrations, including U.S. Trademark Registration No. 4,413,334 for the mark FARADAY for electric bicycles ("the '334 registration"). Vollmer Decl., ¶ 8 and Exhibit E. As stated in the registration, Faraday Bicycles first began using the mark FARADAY in commerce on July 17, 2012. *Id.*, ¶ 9. Faraday Bicycles promptly applied at the U.S. Patent and Trademark Office on August 31, 2012 to register FARADAY, and the '334 registration issued on October 8, 2013. Faraday Bicycles has therefore been developing its trademark rights for more than five years. *Id.* ¶ 10.

### 3.2 Defendant's Use of FARADAY and FARADAY FUTURE

Defendant is engaged in a major marketing and development operation using FARADAY and FARADAY FUTURE as trademarks as it attempts to enter the electric automobile market. This operation has already tarnished the goodwill in the FARADAY trademark due to Defendant's public blundering. Vollmer Decl., ¶ 11 and Exhibit F,[4] *Electric Car Startup Faraday Future Halts Work on Nevada Factory*, *Reuters*, reprinted by *Fortune*, Nov. 15, 2016 (quoting Nevada State Treasurer Dan Schwartz: Faraday Future's proposal to open a Nevada factory "is a Ponzi scheme."). Defendant is funded by LeEco of China and/or Jia Yueting, the CEO of LeEco, with ambitions to compete in the electric vehicle space on a level with Tesla. *Id.* Defendant's operation under the FARADAY and FARADAY FUTURE brands has produced profiles under those names in hundreds of print and digital publications. Vollmer Decl., ¶ 12 and Exhibit G, Google News search results for "Faraday Future" (indexing more than 100 English-language articles just for the 3-month period immediately preceding the filing of this lawsuit, *i.e.*, from January 25 to April 24, 2017). Defendant has appeared at trade shows to advertise its electric vehicles under the mark

---

[4] http://fortune.com/2016/11/15/faraday-future-factory-electric-car/ (accessed Sep. 7, 2017).

"Faraday Future," including at least at the 2016 and 2017 Consumer Electronics Show in Las Vegas, Nevada. Vollmer Decl., ¶ 13 and Exhibits H[5] and I.[6]

In October 2015, more than three years after Faraday Bicycles began commercial use of the FARADAY mark, Defendant filed "intent-to-use" applications for federal registration of the mark FARADAY FUTURE and a stylized variation thereof, for goods including motor vehicles. In one case, Defendant narrowed its description of goods to include only "concept cars and motor vehicle prototypes." Although allowed by the USPTO, this application cannot be brought to registration unless Defendant begins selling concept cars and prototypes commercially, which is not part of Defendant's publicly announced business plans. Declaration of Shawn J. Kolitch, ¶ 2 and Exhibit A.

Faraday Bicycles promptly filed letters of protest against Defendant's two remaining applications, which still recited motor vehicles, and the Examining Attorney in the USPTO initially rejected both applications based on a likelihood of confusion with Plaintiff's registered mark FARADAY. *Id.,* ¶ 3. After Defendant narrowed its description of goods to "passenger automobiles," these applications were subsequently published for opposition and are now the subjects of opposition proceedings by Faraday Bicycles, filed on August 7, 2017. *Id.*, ¶ 4. Faraday Bicycles has filed this motion seeking a preliminary injunction prior to Defendant actually selling any electric vehicles under the FARADAY and FARADAY FUTURE marks because of the urgency in ending the critical damage already suffered and threatened in the future by Defendant's trademark infringement. *Id.*, ¶ 5. Faraday Bicycles registration date of October 8, 2013 for FARADAY predates all of Defendant's public activities, and in fact predates the existence of Defendant as an organized entity. *Id.,* ¶ 6.

### 3.3 The Irreparable Harm to Faraday Bicycle's FARADAY Trademark

---

[5] http://www.businessinsider.com/people-criticize-faraday-future-press-conference-2016-1 (accessed Sep. 7, 2017).
[6] https://www.theverge.com/ces/2017/1/6/14165528/faraday-future-ff91-electric-car-financial-problems-ces-2017 (accessed Sep. 7, 2017).

Defendant is causing irreparable harm to Faraday Bicycles' goodwill in its FARADAY mark through Defendant's use of FARADAY and FARADAY FUTURE as trademarks for its electric vehicles. Defendant's use of these marks in advertising products to consumers infringes Faraday Bicycles' trademark rights. Defendant has not, to the knowledge of Faraday Bicycles, actually sold or even built a production electric vehicle. However, Defendant's advertising currently includes the ability for a consumer to "reserve" one of Defendant's electric vehicles through Defendant's website. Kolitch Decl., ¶ 7 and Exhibit B[7] (printout of the "reservation" page at Faraday & Future Inc.'s website). Additional harm results from Defendant holding itself out as FARADAY FUTURE by advertising to customers at a YouTube channel of "Faraday Future," at a "verified" Twitter account with the handle of @FaradayFuture and titled Faraday Future, and at the Media page of Defendant's website. *Id.*, ¶ 8 and Exhibits C,[8] D,[9] and E.[10]

Faraday Bicycles' asserted mark FARADAY is a strong mark because it is inherently distinctive. Although Michael Faraday is known among engineers and scientists for his contributions in the first half of the 19th century in the field of electricity, that name is not well-known among consumers in the market for electric vehicles. Vollmer Decl., ¶ 14. Additionally, the FARADAY mark has further acquired distinctiveness from Faraday Bicycles' extensive advertising and marketing success. Vollmer Decl., ¶ 15.

Faraday Bicycles sent Defendant a letter dated March 2, 2017, demanding that Defendant immediately stop infringing Faraday Bicycle's trademark rights. Kolitch Decl., ¶ 8 and Exhibit F. Despite Faraday Bicycle's demand, Defendant continues to harm Faraday Bicycles by advertising and operating its electric vehicle company under the name "Faraday Future."

---

[7] https://www.ff.com/us/account/login/?next=https://www.ff.com/us/&reserve=yes (accessed Sep. 7, 2017).
[8] https://www.youtube.com/channel/UC8a0GfKZhuAfAsFjiQZKirA (accessed Sep. 7, 2017).
[9] https://twitter.com/FaradayFuture?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (accessed Sep. 7, 2017).
[10] https://www.ff.com/us/media/ (accessed Sep. 7, 2017).

One aspect of that ongoing harm is manifested in actual confusion between Faraday Bicycles and Faraday Future, which is degrading the goodwill in Faraday Bicycles' trademark. Faraday Bicycles has documented instances of actual confusion among consumers, retailers, and vendors in the electric vehicle (*i.e.*, bicycles and cars) marketplace. Faraday Bicycles' Director of Sales, Tom Kern, experienced several of these instances of confusion, particularly while Defendant was publicizing a plan in 2016 to build an electric vehicle factory on Mare Island. This plan was subsequently scrapped, resulting in further bad publicity associated with FARADAY. Declaration of Tom Kern, ¶ 2 and Exhibit A,[11] Baron, Ethan, Faraday Future Electric Car Company Backs away from Planned Vallejo Factory, *The Mercury News siliconbeat*, Mar. 24, 2017. These individuals expressed confusion based in part on an expectation that a single company would be marketing both bicycles and cars under the mark FARADAY. *Id.*, ¶ 3. Several retailers and distributors to whom Mr. Kern marketed the Faraday line of bicycles were similarly confused. *Id.*, ¶ 4. Mr. Kern encountered such confusion both at the retailers' and distributors' locations and at the 2016 Interbike trade show, which is the largest annual U.S. show in the industry. *Id.*, ¶ 5.

Mr. Vollmer also experienced an instance of actual confusion regarding the proposed Mare Island factory. Vollmer Decl., ¶ 16 and Exhibit J. Faraday Bicycles' vendors are confused by Faraday Future. *Id.*, ¶ 17 and Exhibits K, L, and M. Faraday Bicycles has received multiple instances of actual confusion among consumers in relation to Faraday Bicycles' online marketing efforts via Facebook and through the chat and email features on its website. Declaration of Thomas Whitaker, Faraday Bicycles' Head of Marketing., ¶ 2 and Exhibits A-F.

The fact that retailers, consumers, and vendors in the electric vehicle marketplace are all confused about the simultaneous use of FARADAY for electric bicycles and uses of FARADAY and FARADAY FUTURE for electric cars is not surprising, because several companies offer both electric bikes and electric cars under the same trademark. Vollmer Decl., ¶ 18. BMW USA sells

---

[11] http://www.siliconbeat.com/2017/03/24/faraday-future-electric-car-company-backs-away-from-planned-vallejo-factory/ (accessed Sep. 7, 2017).

both BMW electric cars and BMW electric bikes. *Id.*, ¶ 19 and Exhibits N,[12] O,[13] and P. The FORD trademark is used both for the Ford Focus electric car and the Ford Super Cruiser electric bicycle. *Id.,* ¶ 20 and Exhibits Q[14] and R.[15] Likewise, an electric bike company, SONDORS, recently completed a successful Online Public Offering (OPO) to start the SONDORS electric car company. *Id.,* ¶ 21 and Exhibits S[16] and T.[17] Other companies, such as Audi and Mercedes, sell both electric bicycles and cars under the same brand, although the electric bicycles are seemingly not yet available in the USA. *Id.,* ¶ 22. Thus, consumers looking for either an electric car or an electric bicycle expect that a trademark is likely to indicate a single, unique source for both. This is due to both the aforementioned co-branded offerings in the marketplace as well as a broader expectation about the growing importance of electric power for all forms of transportation. *Id.*, ¶ 23 and Exhibit U.[18]

Meanwhile, Defendant's ambitious plan to compete with Tesla Motors has led to multiple instances of bad publicity that have damaged Faraday Bicycles' FARADAY mark by confusing consumers and tarnishing the goodwill of the FARADAY mark. Defendant, as noted above, announced plans for, and months later withdrew from, building a factory on Mare Island in Vallejo (*see* Kern Decl., Exhibit A), and Defendant repeated the same missteps with a factory announced for Las Vegas, ultimately withdrawing those plans as well. Vollmer Decl., ¶ 24 and Exhibit V.[19] The executive publisher of Autotrader and the Kelley Blue Book, Karl Brauer, sums up Defendant's reputation as of July 11, 2017 as: "Faraday has all the earmarks of one of those companies that promises you the world but doesn't necessarily deliver it." *Id.* That bad reputation

---

[12] https://www.bmwusa.com/vehicles/bmwi.html (accessed Sep. 7, 2017).
[13] https://cleantechnica.com/2016/10/19/bmw-cruise-e-bike-bmw-north-america-launches-new-e-bike-available-3430/ (accessed Sep. 7, 2017).
[14] http://www.ford.com/cars/focus/2017/models/focus-electric/ (accessed Sep. 7, 2017).
[15] https://www.pedegoelectricbikes.com/shop/ford-super-cruiser/ (accessed Sep. 7, 2017).
[16] https://www.startengine.com/startup/sondors-electric-car (accessed Sep. 7, 2017).
[17] https://sondors.com/ (accessed Sep. 7, 2017).
[18] https://www.faradaybikes.com/the-future-of-transportation-is-electric/ (accessed Sep. 7, 2017).
[19] https://www.usatoday.com/story/tech/news/2017/07/11/faraday-future-ditches-plan-electric-car-plant/467876001/ (accessed Sep. 7, 2017).

stems not just from the factory missteps, but also from repeated missteps in presenting the FARADAY FUTURE concept and prototype vehicles to the market. *Id.,* ¶ 25 and Exhibits H,[20] I,[21] W,[22] and X.[23]

The consistent theme running through the bad publicity for Faraday Future for two-plus years is disbelief that it will ever deliver an actual production electric vehicle. *Id.,* ¶ 26 (MIT Technology Review, Dec. 22, 2016: "Several in-depth pieces about the company that has promised to compete with Tesla for the burgeoning electric car market have detailed a pattern of questionable business practices, and suggest the firm is heading toward collapse before selling a single car."; Business Insider, Jan. 5, 2016: "[Faraday Future VP of R&D] Sampson responded to the early criticism, insisting what the company is making isn't vaporware, or a product that'll never be released…"; The Verge, Jan. 6, 2017: "They refused to discuss finances or even pricing of the car and frankly the video of moving dirt may have been counterproductive because it showed they really haven't done anything on the factory."; TechCrunch: July 10, 2017: "I doubt the company will ever put a vehicle into production.").

The confusion that Faraday Future's infringement is causing continues to the present. A passenger on the Caltrain in April 2017 saw Mr. Vollmer's FARADAY sticker on his laptop and said, "Hey, Faraday – you're the electric car company, right?" Vollmer Decl., ¶ 27. Faraday Bicycle's Head of Product, JT Burke, in Philadelphia, Pennsylvania in June 2017 encountered multiple instances of family members and guests at his wedding assuming that the "Faraday" he worked for was an electric car manufacturer. *Id.* At the Pedalfest Oakland bicycle festival on July 22, 2017, in which Faraday demonstrated its bikes, a manufacturer of electric bicycles who was

---

[20] http://www.businessinsider.com/people-criticize-faraday-future-press-conference-2016-1 (accessed Sep. 7, 2017).

[21] https://www.theverge.com/ces/2017/1/6/14165528/faraday-future-ff91-electric-car-financial-problems-ces-2017 (accessed Sep. 7, 2017).

[22] https://www.technologyreview.com/s/603268/is-the-electric-car-startup-faraday-future-doomed-to-fail/ (accessed Sep. 7, 2017).

[23] https://techcrunch.com/2017/07/10/faraday-future-is-one-step-closer-to-the-deadpool/ (accessed Sep. 7, 2017).

also exhibiting came to our booth and said, "Hi guys, nice to meet you, we really love the cars you make too." *Id.*

Additionally, Defendant appears to have been sued at least four times for allegedly failing to pay its contractors, suppliers and landlords. Kolitch Decl., ¶ 9 and Exhibits G,[24] H,[25] I,[26] and J.[27]

### 4. <u>Legal Argument</u>

Faraday Bicycles seeks relief in the present action against Defendant's infringement of Faraday Bicycles' trademark rights under Section 32 of the Lanham Act (15 U.S.C. § 1114) and against Defendant's false designation of origin under Section 43 of the Lanham Act (15 U.S.C. § 1125).

### 4.1 <u>Legal Standard for a Preliminary Injunction Against Trademark Infringement</u>

The basic contention underlying all of Faraday Bicycles' claims is that Defendant has used, and continues to use, FARADAY as a trademark to promote its business venture to sell electric vehicles in a manner that infringes Faraday Bicycles' rights in the FARADAY trademark, and which is irreparably damaging Faraday Bicycles' goodwill in the trademark. Plaintiffs are entitled to injunctive relief related to their federal claims under 15 U.S.C. § 1116(a), which allows a court to grant an injunction "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."

Under the law of the Ninth Circuit, a party seeking a preliminary injunction "must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736

---

[24] http://www.businessinsider.com/faraday-future-car-lawsuit-the-mill-group-money-problems-2017-1 (accessed Sep. 7, 2017).
[25] http://jalopnik.com/faraday-future-hit-with-583-000-suit-for-failing-to-pa-1792935824 (accessed Sep. 7, 2017).
[26] https://www.documentcloud.org/documents/3239346-Futuris-Faraday.html (accessed Sep. 7, 2017).
[27] https://www.documentcloud.org/documents/3239347-Faraday-Beim-lawsuit.html (accessed Sep. 7, 2017).

F.3d 1239, 1247 (9ᵗʰ Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). This Court may grant a preliminary injunction within its discretion because the Ninth Circuit will only "review a district court's preliminary injunction for abuse of discretion, a standard of review that is 'limited and deferential.'" *Herb Reed* at 1247 (citing *Johnson v. Couturier,* 572 F.3d 1067, 1078 (9th Cir. 2009)). "If the district court 'identified and applied the correct legal rule to the relief requested,' we will reverse only if the court's decision 'resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *Herb Reed* at 1247 (citing *United States v. Hinkson,* 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

The *Herb Reed* court stated that: "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed* at 1250. A district court in the Ninth Circuit recently applied the *Herb Reed/Winter* standard for irreparable injury to grant a motion for preliminary injunction, reasoning that courts "have consistently found that losing control over trademarks, and with them, control over business goodwill and reputation, constitutes irreparable injury, justifying injunctive relief." *Rhino Metals, Inc. v. Kodiak Safe Co., LLC*, 2017 US Dist. 91744, *44 (D. Ida. 2017, Mag. J. Rush, adopted by *Rhino Metals, Inc. v. Kodiak Safe Co., LLC*, 2017 US Dist. 90820 (D. Ida. 2017)).

A district court in Florida, in granting a preliminary injunction, focused on the meaning of "likely" in the *Winter* requirement that "plaintiffs seeking preliminary injunctive relief must demonstrate that irreparable injury is *likely* in the absence of an injunction." *Uber Promotions, Inc. v. Uber Technologies, Inc.*, 161 F. Supp. 3d 1253, 1276 (N.D. Fla. 2016). The *Uber* court considered three factors in determining whether irreparable harm was *likely*: the anticipated growth of Uber Technologies (*i.e.*, the prominent online car service) in the market where Uber Promotions (a Florida promotional/event service provider) is the senior user, the effect of a more directly competitive portion of Uber Technologies' business, and "the massive amount of negative press attention that [Uber] Tech[nologies] receives." *Id.* at 1277. Uber Promotions "put into evidence many examples of negative press" and the court stated it "could point to many more." *Id.* The court

concluded that Uber Promotions "had every reason not to want potential customers and other members of the public to associate it with a company that has inspired protests in cities around the world." *Id.* The Court concluded that injunctive relief was necessary due to likely irreparable harm to Uber Promotions' reputation and goodwill. *Id.*

As discussed below, Faraday Bicycles has shown both a high probability of success on the merits of their claims and a strong likelihood of irreparable harm in the absence of an injunction. Furthermore, the balance of hardships tips sharply in its favor, and the public interest favors granting an injunction.

### 4.2 Faraday Bicycles Has a High Likelihood of Success on the Merits

Faraday Bicycles ownership of the FARADAY trademark is established by its use of the mark in commerce since 2012 and its federal registration for the mark in 2013, and its continued use since then. *See* pp. 3-4, above. Defendant's FARADAY and FARADAY FUTURE trademarks are confusingly similar to the FARADAY trademark, establishing infringement. *Grocery Outlet, Inc. v. Albertson's, Inc., 497 F.3d 949, 951 (9th Cir. 2007).* This is apparent by applying the *Sleekcraft* test for likelihood of confusion in light of the facts established above. This test considers the following factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.[28]

*(1) Strength of the Mark*

The FARADAY mark is inherently distinctive, because FARADAY in relation to electric bicycles and other electric vehicles is at most suggestive to a small subset of engineers and scientists familiar with the historical scientific figure Michael Faraday. For the ordinary consumer, FARADAY is arbitrarily applied to the products at issue in this case. *See* p. 7, above. Faraday Bicycles has further strengthened the FARADAY mark through extensive marketing under the

---

[28] *AMF v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).

FARADAY mark for more than five years. *See* pp. 3-4, above. Thus, the strength of the mark supports finding a likelihood of confusion.

### (2) Proximity of the Goods

A likelihood of confusion is supported by the close proximity of the goods in this case. Electric cars and electric bicycles are both vehicles to satisfy consumer demand for clean-energy, personal transport. BMW and Ford sells electric cars and bicycles in the U.S. under the BMW and Ford trademarks. Further, an electric bicycle manufacturer (SONDORS) is expanding into the electric car market. Audi and Mercedes sell both electric bicycles and cars under the same brand, although the electric bicycles are not yet available in this country. Thus, consumer expectation in relation to a trademark for either an electric car or an electric bicycle is that it is likely to indicate a single, unique source for both. This results from both the co-branding of cars and bicycles, as well as a broader expectation about the growing importance of electric power for all forms of transportation. *See* pp. 8-9 above. The actual confusion between the marks that Faraday Bicycles has observed also supports and correlates with the products-proximity factor. *See* pp. 7-8, above.

### (3) Similarity of the Marks

The similarity of the marks weighs in favor of a likelihood of confusion, because the respective marks are identical as to FARADAY and very similar as to FARADAY FUTURE. "When one incorporates the entire arbitrary mark of another, inclusion in the composite mark of a significant, nonsuggestive element will not necessarily preclude a likelihood of confusion. *See Wella Corp. v. Cal. Concept Corp.*, 558 F.2d 1019, 1022 (C.C.P.A. 1977) (finding CALIFORNIA CONCEPT and surfer design and CONCEPT confusingly similar); *Coca-Cola Bottling Co. v. Jos. E. Seagram & Sons, Inc.*, 526 F.2d 556, 557 (C.C.P.A. 1975) (finding BENGAL and BENGAL LANCER and design confusingly similar); *Hunter Indus., Inc. v. Toro Co.*, 110 USPQ2D 1651, 1660-61 (TTAB 2014) (finding PRECISION and PRECISION DISTRIBUTION CONTROL confusingly similar); *In re El Torito Rests., Inc.*, 9 USPQ2d 2002, 2004 (TTAB 1988) (finding MACHO and MACHO COMBOS confusingly similar).

In addition, the first word of each mark is identical in this case, and consumers are generally more inclined to focus on the first word in a trademark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1372 (Fed. Cir. 2005) ("[t]he presence of this strong distinctive term as the first word in both parties' marks renders the marks similar"); *Presto Prods., Inc. v. Nice-Pak Prods., Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered" when making purchasing decisions). Accordingly, consumers are more likely to focus on the identical and distinctive FARADAY element in the marks at issue in this case, and to be confused regarding the source(s) of the goods.

### (4) Evidence of Actual Confusion

The numerous documented instances of actual confusion in this case also support a finding of likelihood of confusion. This factor is also a manifestation of the irreparable harm to the reputation and goodwill in FARADAY. Faraday Bicycles has documented instances of actual confusion among consumers, retailers, and vendors in the electric vehicle marketplace. *See* pp. 7-8, above. Actual confusion is "'persuasive proof that future confusion is likely.'" *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1082 (9th Cir. 2005) (quoting *Sleekcraft* at 352).

The actual confusion in this case has included multiple instances of an individual thinking that Faraday Bicycles and Defendant were related, which "is evidence of actual confusion within the meaning of the Lanham Act." *Uber* at 1272. Specifically, the expressions to Tom Kern such as "I didn't know you guys made bikes, is that how you got into the car business?" "Will you be giving away bikes with your new cars?" and "I have heard of Faraday and know you are a SF based company but didn't know you were as big as you are. Who is backing the car initiative?" are all examples of the individual knowing about FARADAY bicycles and FARADAY cars, and assuming a connection between the two. Kern Decl. ¶¶ 2-3. As in *Uber,* "there is definitely evidence of actual confusion in the record." *Uber* at 1273.

The damage to Faraday Bicycles' reputation from negative reporting on Faraday Future is even more acute than in the *Uber Promotions v. Uber Technology* case. In the *Uber* case, the negative

reporting highlighted general opposition to Uber Technology due to privacy concerns and the company's treatment of drivers, rather than the quality of Uber Technology's services. For example, the *Uber* court cited to articles about an Uber driver having personal information revealed and about drivers protesting fare cuts, and described Uber as "a company that has inspired protests." *Uber* at 1277.

In the case of Faraday Future, the negative reporting about the company highlights Faraday Future's bad reputation as to whether it will ever deliver on promises to produce a viable electric vehicle to the market. *See,* pp. 9-10, above, *e.g.,* most recently TechCrunch: "I doubt that the company will ever put a vehicle into production." Thus, even more than in the *Uber* case, the infringer here is tarnishing the FARADAY trademark with respect to the most important aspect of the trademark: to distinguish a unique source for high-quality electric vehicles.

Faraday Future's reputational harm to the FARADAY mark from the illusory nature of its product is similar to the illusory product offered by defendant in the *BitTorrent* case. *BitTorrent, Inc. v. Bittorrent Marketing GMBH*, 2014 US Dist. LEXIS 157593, *42 (N.D. Cal. 2014). There, the court held that the plaintiff "established irreparable injury in the form of damage to its reputation and goodwill from Defendant's systematic cybersquatting and use of the BITTORRENT mark to deceive customers into paying for illusory digital download products and services." *Id.* Here, Faraday Bicycles' reputation, embodied in its FARADAY mark, for consistently delivering high-quality product is being irreparably harmed by Faraday Future's failure to deliver or even to make people believe it can deliver any product.

Adam Vollmer has experienced additional instances of actual confusion in which an individual assumed a connection between FARADAY bicycles and FARADAY cars. For example, one individual contacted Faraday Bicycles and stated: "I am not sure if this encompasses your bike brand also but I understand Faraday is building a distribution/Manufacturing location on Mare Island . . ." Vollmer Decl., ¶ 16 and Exhibit J. This individual knew she was contacting Faraday Bicycles and assumed a connection to the "Faraday" planning to build on Mare Island, which is actual confusion under the Lanham Act. Similarly, various vendors who emailed Mr. Vollmer

knew about Faraday Bicycles and Faraday Future and assumed a connection, *e.g.*, "Recently we know that Faraday Future designed a new E-car FF91, is there [sic] design idea from you? Because it's same Faraday." *Id.*, ¶ 17 and Exhibits K, L, and M. Thomas Whitaker's experience of instances of actual confusion similarly are examples of individuals who know they were contacting Faraday Bicycles and believed there was a connection to the "Faraday" car company. Whitaker Decl., ¶ 2 and Exhibits A-F. The instances of actual confusion continue at present and show no signs of abating. Vollmer Decl., ¶ 27.

### (5) Marketing Channels Used

The marketing channels factor supports a likelihood of confusion, because the channels that Defendant uses, which are online marketing and at trade shows such as the Consumer Electronics Show (CES), are the same as those used by Faraday Bicycles. *See* pp. 4 and 5-6, above.

### (6) Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser

The consumer-care factor is "largely dependent upon the similarity of the marks at issue." *Daddy's Junky Music Stores, Inc. v. Bid Daddy's Family Music Ctr.*, 109 F.3d 175, 286 (9th Cir. 1997). In the present case, as in *Daddy's,* where the "marks are quite similar," consumer care "will decrease the likelihood of confusion only minimally" and "even a purchaser who is extremely careful and knowledgeable" might assume "that the seller is affiliated with or identical to the other party." *Id.* Both Faraday Bicycles and Defendant market their products to ordinary consumers seeking transportation options, rather to any especially expert audience. Moreover, "confusion may be likely even in the case of expensive goods sold to discerning customers." *Brookfield Comm., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). The *Sleekcraft* court, in weighing the consumer-care factor, noted that "both parties produce high quality, expensive goods" and that "the boats 'are purchased only after thoughtful, careful evaluation of the product and the performance the purchaser expects,'" but still pointed out that "[t]he wrong inheres in involuntarily entrusting one's business reputation to another business." *AMF v. Sleekcraft Boats,* 599 F.2d 341, 353-54 (9th Cir. 1979). As in the *Sleekcraft* and *Daddy's*

cases, the damage to reputation from Faraday Bicycles' loss of control to an infringer using the same or extremely similar mark occurs irrespective of the sophistication of the consumer.

*(7) Defendant's Intent in Selecting the Mark*

Defendant has been on notice of Faraday Bicycles' infringement allegations at least since March 2016, and has intentionally continued the infringement nonetheless. *See* p. 6, above. Defendant also had constructive notice from Faraday Bicycles' federal registration before it chose the FARADAY and FARADAY FUTURE marks. *See* pp. 5 and 6, above. Accordingly, the Court can reasonably question Defendant's good faith in this case, as Defendant appears to have knowingly adopted a mark similar to Faraday Bicycles' mark, and has undoubtedly continued to use its similar mark despite actual knowledge of Faraday Bicycles' superior rights.

*(8) Likelihood of Expansion of the Product Lines*

Faraday Bicycles does not know whether Faraday Plans to enter the electric bicycle market directly. However, if Faraday Future follows the industry trend set by others such as BMW, Ford, Audi, Mercedes and SONDORS, it seems likely it will eventually wish to sell electric bicycles as well as electric cars. *See* Vollmer Decl., ¶¶ 18-22, Exhibits N-U. In addition, while Faraday Bicycles itself has no plans to manufacture or sell electric cars, the company was recently acquired by Pon Holdings B.V. ("Pon"). *See* van Hussen Decl., ¶ 2. Pon operates an extensive automobile dealer and service network in the Netherlands, which includes sales and service of brands such as Volkswagen, Audi, Porsche, Skoda, and Bentley, among others, and is in the process of expanding into the U.S. *Id.*, ¶ 3. Pon's acquisition of Faraday Bicycles is another example of how electric bicycles and electric cars are part of an integrated electric vehicle marketplace for mobility products, and within the likely scope of expansion. *Id.*, ¶ 4. This association makes it more likely that consumers will be confused when they see an electric car company using the same trademark as Faraday Bicycles.

In sum, most of the *Sleekcraft* factors for likelihood of confusion strongly favor a finding of trademark infringement, and the remaining factors are neutral at worst. Thus, Faraday Bicycles has established a strong likelihood of success on the merits.

### 4.3 <u>Faraday Bicycles Is Being Irreparably Harmed</u>

As discussed above at pp. 11-12, the loss of control over business reputation and damage to goodwill can constitute irreparable harm under the Lanham Act. *Herb Reed* at 1250. Negative press that is not controlled by the trademark owner, but rather is produced by the actions of the infringer is one source of likely damage to reputation and goodwill. *Uber Promotions* at 1277. In the present case, just such loss of control and negative press has been demonstrated through multiple instances of bad publicity generated by Defendant. *See* pp. 5-6 and 9-10, above. For example, Defendant's abortive plans for factories and failed public presentations of FARADAY-branded vehicles have produced the following reputation: "Faraday has all the earmarks of one of those companies that promises you the world but doesn't necessarily deliver it." In addition, in its short lifetime, Defendant has been sued not just once but at least *four times* for allegedly failing to pay its contractors, suppliers and landlords. Kolitch Decl., ¶ 9 and Exhibits G, H, I, and J. This bad reputation for failing to perform and to keep promises has caused irreparable damage to Faraday Bicycles' trademark, and will likely continue to cause increasing irreparable harm to Faraday Bicycles in the absence of injunctive relief.

The instances of actual confusion under the Lanham Act also support a finding of irreparable harm. In a pre-*Herb Reed* case, a district court applied the *Winter* rule requiring a likelihood of irreparable harm, and in the irreparable harm analysis considered the fact that "it will be extremely difficult for [the senior trademark owner] to maintain and restore its goodwill among customers, *some of whom are already being confused by defendant's products*." *CytoSport, Inc. v. Vital Pharms., Inc.,* 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) (emphasis added). The *CytoSport* court found irreparable harm and granted a preliminary injunction in part due to this actual confusion. *Id.* Similarly, in the *Athleta* case, the district court weighed instances of actual confusion in finding irreparable harm and granting a preliminary injunction. *Athleta, Inc. v. Pitbull Clothing Co.*, 2013 U.S. Dist. LEXIS 6867, *34 (C.D. Cal. 2013). The *Athleta* court reasoned that after actual confusion, "[d]efendants' corrective actions cannot undo consumer confusion in the

women's athletic apparel market that has already been sowed." *Id.* Similarly, in the present case, injunctive relief is necessary to prevent Defendant from sowing further consumer confusion.

Faraday Bicycles has moved promptly with this suit and the present motion upon becoming aware of "significant evidence of actual and likely confusion." *Athleta* at *35. Therefore, Faraday Bicycles did not unreasonably delay in bringing its suit for injunctive relief, and Defendant's use of the FARADAY mark to operate its electric vehicle company and to advertise its products should be found to be causing irreparable harm.

### 4.4 <u>The Balance of Hardships Favors Faraday Bicycles</u>

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987). In the present case, Faraday Bicycles has demonstrated its significant and irreparable injury that necessitates injunctive relief. Defendant has little or no risk of harm from such relief because Defendant has not, to the knowledge of Faraday Bicycles, actually sold or even fully developed a production electric vehicle. The lack of an actual FARADAY-branded production car means that Defendant's investment in the mark is minimal at this point. Therefore, a preliminary injunction now, while Defendant has no production car and no actual customers, will have minimal risk of harm to Defendant during litigation.

Defendant issued a press release[29] in January 2017 stating that "production of FF 91 is planned to start in 2018," but with the subsequent demise of Defendant's factory plans in California and Nevada, even 2018 seems optimistic. Therefore, this case could be resolved at the summary judgment or trial stage before Defendant ever applies a trademark to a production vehicle. All of this clearly shows that the balance of hardships tips in Faraday Bicycles' favor, and supports the conclusion that Defendant should be preliminarily enjoined to cease use of FARADAY and FARADAY FUTURE while this litigation proceeds through discovery, summary judgment, and/or

---

[29] https://www.ff.com/us/media/ff-91-press-release/ (accessed Sep. 7, 2017).

trial to stop the ongoing consumer confusion and reputational harm to Faraday Bicycles and its FARADAY mark.

**4.5 <u>Granting an Injunction Serves the Public Interest</u>**

This Court "must consider the public interest in enjoining defendant's conduct." *Winter*, 555 U.S. at 32. "The usual public interest concern in trademark cases is avoiding confusion to consumers." *Athleta* at *38. In the present case, as in *Athleta*, "documented consumer confusion supports the issuance of a preliminary injunction, in the interest of avoiding future instances of the same." *Id.* The public interest in protecting consumer confidence in the source-identifying nature of trademarks will be served by the grant of a preliminary injunction against Defendant's infringing uses of FARADAY and FARADAY FUTURE.

**5. <u>Conclusion</u>**

In view of the foregoing, Plaintiff Faraday Bicycles moves the Court for an order that Faraday Bicycles is entitled to injunctive relief. Specifically, Faraday Bicycles requests an order prohibiting Defendant from using FARADAY, FARADAY FUTURE, and any mark confusingly similar to these to promote, market, or sell any product or service in the electric vehicle industry.

DATED September 7, 2017.

Respectfully submitted,

KOLISCH HARTWELL, P.C.


By     /s/ Shawn J. Kolitch           
              Shawn J. Kolitch (*admitted Pro Hac Vice*)
              E-mail: shawn@khpatent.com
              260 Sheridan Avenue, Suite 200
              Palo Alto, California 94306
              Telephone: (650) 325-8673
              Facsimile: (650) 325-5076

              *Attorney of Record for Plaintiff*
              *Faraday Bicycles, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2017, that a true and correct copy of the foregoing Plaintiff's Motion for Preliminary Injunction was served by the method indicated below on the following person:

| | |
|---|---|
| Mark Sommers<br>E-mail: mark.sommers@finnegan.com<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>901 New York Avenue, NW<br>Washington, D.C.  20001-4413<br>Telephone: (202) 408-4064<br>Facsimile: (202) 408-4400<br><br>*Of Attorneys for Defendant* | ( )   First-Class Mail<br>( )   Hand-Delivery<br>( )   Overnight Courier<br>( )   Facsimile<br>(x)   E-mail<br>(x)   CM/ECF |

By /s/ Shawn J. Kolitch
Shawn J. Kolitch
*Of Attorneys for Plaintiff*
*Faraday Bicycles, Inc.*